Good afternoon, your honors. May it please the court. I'm Gilbert Levy. I represent the appellant Lorenzo Mendez. Mr. Mendez went to trial on this most serious charge with a biased juror. The bias was so obvious that it was a situation where the district court had an obligation to do something. Even if defense counsel did nothing, the district court did not act. However, Mr. Mendez was therefore deprived of his due process right to a fair trial. LORENZO ELIAS MENDEZ Counsel, may I ask a question right there, please? The standard you've just recited, I think, comes from Mitchell. So my first question is, is it your position that Mitchell controls here? LORENZO ELIAS MENDEZ Yes. LORENZO ELIAS MENDEZ Okay. So if that's the case, then can we back up and talk about why it is you think that the bias was so apparent that the judge was required to bump sua sponte? LORENZO ELIAS MENDEZ Well, the juror in this case said that he or she was a pediatric nurse and had seen bad things with children. The juror in this case was questioned by the district court and said that he or she could not apply the evidence to the case in an undias manner. The juror said to the district court that he or she felt a sense of outrage based upon the subject matter of the litigation and was therefore not 100 percent sure that he or she could be fair. LORENZO ELIAS MENDEZ I think that's right. If I could write that. I think the juror did say a couple of times that she wasn't sure or he or she wasn't sure. And then the difficulty for me, and this is for both lawyers, the trial transcript, of course, goes on. And the judge asked a lot more questions and engaged the whole veneer in what an attempt I think is to get at implicit bias and really to ask the jurors to look into themselves and say not the answer that they thought was the quote unquote right answer, but really what their beliefs were. And then we have this juror number sitting through a protracted session where many other jurors came forward and said, no, this is America. There's a presumption of innocence and so on and so forth, followed by the judge asking the entire veneer, does anybody now believe that they could not be impartial? I'm summarizing. And several jurors raised their hands, but not juror number eight. After that, of course, the lawyers had an opportunity to ask questions and to bump the juror and did not. So why should we not read the entirety of the transcript and take note of the fact that the juror did not raise her hand when the judge said now, does anybody think they cannot be impartial? The court's general questions, if I'm reading the record correctly, dealt primarily with questions about burden of proof and presumption of innocence. And there's language in this court's Chedzian, if I'm pronouncing it correctly, which basically says just because the court asked general questions about burden of proof and presumption of innocence and the juror is silent, doesn't necessarily mean that the juror isn't biased, because at least as I read the record, none of the general questions which follow the individual questioning dealt specifically with the issue of bias. And so I don't feel. I don't know. Excuse me for interrupting. I don't know how to pronounce that case either. Ketchian, perhaps. And I agree with you. In that case, the follow-up questions definitely went to, do you understand the government's burden of proof? And we made it very clear they didn't go to impartiality, and that's quite different. So if I read the record differently than you do, and I think some of these follow-up questions do go to impartiality and she did not raise her hand, just take that as a hypothetical, if you would, because I don't want to use up all your time. Should that change my view of the outcome here? I think if the question dealt with impartiality, then it would change my argument, take the scope of my argument. But as I read the general questions, Your Honor, and it's my reading, I went through it carefully recently. Those general questions dealt with burden of proof, presumption of innocence, things like that. Thank you. You've answered the question. Thank you. Okay. I'm kind of puzzling over the standard of review here. You, of course, mentioned Mitchell. And the judge says, do you wish to challenge? And both counsels say, no. Here we have a lawyer who's silent, doesn't raise a challenge, but also doesn't say, no, I don't want to make one either. And given the somewhat ambiguous state of some of our cases on standard of review, what do you think is the standard of review on the jury question? Well, it's the standard of review that the court would apply if there's structural error. And at least in Dyer versus Calderon, and as acknowledged in Mitchell, putting a biased juror on the jury is structural error. So that the standard of review, whatever it is, is not plain error. That's our position. That's what we said in Dyer. And that was a case where a juror was lying. We actually use that word, you know, lying to get into court, quite different. But in Mitchell, that's not what the majority did. The majority set out a different standard, right? Well, the standard is, as the court indicated in Mitchell, the appellant must show evidence of impartiality so indicative of impermissible juror bias that the juror was obligated to strike the juror. And I think in this case, based upon this juror's answers, there was sufficient, more than sufficient evidence of bias that the district court should have done something. Right. My point is just getting back to Judge McEwen's question. If it's structural error, that would be the end of it. If there's a biased juror, that would be the end of the analysis, as I understand it. So I'm trying, I'm puzzling over your answer to Judge McEwen's question. Well, the best answer I can give is the one that was given by this court in Mitchell, that it's something more than plain error and a stronger showing is required, which is what the court indicated in Mitchell. And I believe, based on this record, that there was a sufficiently strong showing that the district court should have done something. The juror's answers were very clear and unambiguous, unlike the ambiguous answers that were given by the juror in Mitchell. Can I ask you about that? Because I don't understand how you can say it's unambiguous, because one of the things that we really don't have here is any information about the tone or someone who says, I'll try, is probably a lot less concerning than someone who says, yes. Right. But we don't know which it was. And we don't know that because there was no objection and the district court had no opportunity to make findings on that. So I mean, doesn't that highlight the reasons why we have a contemporaneous objection requirement? Well, there is a contemporaneous objection requirement, but there are also situations where, at least as according to Mitchell, where the facts are sufficiently clear that the district court should have done something. I'd indicate here that what happened in Mitchell was the juror gave conflicting answers as to whether or not she would be affected by previous life experience. The juror in Mitchell never said that she was unsure as to whether or not she could be fair. In this case, the juror just said, I'm not 100 percent sure that I could be fair. The juror never said that I'll try to be fair, which is more of a commitment. The juror never said I can follow the instructions of the court and apply the facts of the law fairly. The juror never said any of these things. The juror in this case did say that she would try, right? She said, I would try, you know, I would hope I would be able to, but I'm not 100 percent sure. That's page 30 of the transcript, 45 of the ER. And the difficulty is if we look at the entire transcript, there were other jurors who were equivocal, who raised their hand, and the folks in the courtroom, including especially a defense attorney, followed up with them. But whatever other spoken or unspoken communication was going on with juror number eight, they didn't feel a need to follow up with that juror. And that's, I think, what Judge Miller is getting at. So why shouldn't, what should we read into that? I think that's, I think that's entitled in some way, but I think what happened here is that the jurors answered questions individually. They were passing the microphone around. Then the district court asked general questions. Then individual jurors asked to speak personally with the judge. And by the time they got around to peremptory challenges or challenges for cause, it could just as easily read the record as everybody kind of forgot about this juror. And that shouldn't have happened. What surprises me, I was surprised you thought that Mitchell is your strongest case because in Gonzales, the juror was much more like the juror here. I'll try, some more colloquy. I'll try. And that's what we have here. So is there some inconsistency or need to resolve something between Gonzales and Mitchell? No. I mean, I think that Mitchell supports our position. I think Kitschedzian supports our position where the juror also said she would try. And in both of those cases, although there were contemporaneous objections in those cases, in both of those cases, this court held that the jurors should have been excused for cause. I mean, we're still left with a problem that there was a biased juror, potentially a biased juror on this panel. And my client didn't receive a fair trial. Did you exhaust all of your peremptory challenges? Yes. I just, if I, I'd like, I'd just like briefly to discuss the constructive amendment issue. The statute 2251A has three jurisdictional hooks, knowing that the material would be transmitted in interstate commerce using items that had been transmitted in interstate or foreign commerce to produce the images. And the images were actually transmitted in interstate or foreign commerce. The indictment in this case charged jurisdictional hooks one and two. The jury instruction in this case, contrary to the indictment, alleged all three jurisdictional elements. My client could have been convicted on a charge that was not presented to the grand jury. He was therefore deprived of his Fifth Amendment right to be tried on charges presented to the grand jury. And the conviction should be reversed for that reason as well. I'll reserve the rest of my time. Before you get to that, I'll give you a little extra time because I'll have some questions. I have a question on this use of a minor in the construction of the statute. And it seems to me from your argument that you're basically saying that use should be the same thing as employ, persuade, induce. But it is a different word. So why does it really mean the same thing as those other verbs? Well, in that Seventh Circuit case that I cited in my briefing in Lauer, this court held that the word use had to be construed consistently with all the other terms in the statute. And under all the other terms, one has to have caused the minor to do something. And in this case, Mr. Mendez did not cause or induce the minor to do anything. He simply installed a camera. And it's our position based upon that construction of the word use. And I'm sorry, I don't remember the Latin term. But under that construction of the word use where he's supposed to have caused the minor to do something, he did not cause the minor to do anything. So would that put us, though, in a circuit split with some of the other circuits like the Second and maybe the Eighth, where they basically say if you have a minor who's being the Ninth Circuit in a certain split? I agree. So there's a split now with the Seventh, is that right? We'd be in the camp with the Seventh, I think. That's correct. But in the Seventh Circuit that you're relying on, the minor did not engage in any sexual activity at all. In that case, the minor was, if I recall correctly, fully clothed and asleep, and the defendant engaged in sexual conduct in the minor's presence. So to say that that isn't use of a minor doesn't seem like it really bears on the question that we have, where the minor is engaging in sexual conduct in our case. But the statute requires the defendant to use the minor to engage in sexual conduct for the purpose of creating pornography. So my problem with this is reading out, some of these cases seem to overlook the phrase use to engage in sexual conduct. A lot of the fact patterns, in other words, include defendants who are actually engaging in sexual conduct with a minor and filming it, and those are easy cases. Or getting the minor to do something. Or getting the minor to do something, right. The Seventh Circuit case is a whole lot closer to our case, although all the facts in our case are a much more extreme example. Because the question is whether the defendant used the minor to engage in sexual conduct. Well, both the Seventh Circuit case and the Ninth Circuit case in Lauer seem to construe the term use in the same manner. Meaning that the defendant has to have done something to cause the minor to engage in sexually explicit conduct. And I agree with Judge Miller that the Seventh Circuit case is factually distinguishable. But what's relevant here, at least to me, is the way that both the Seventh Circuit and the Ninth Circuit have construed the term use to be consistent with the other terms in the statute. All right, I'll give you a minute for rebuttal. We've used a lot of your time. We'll hear now from the government. Thank you, Your Honor. Good afternoon. May it please the Court. Alison Gregg Weyer on behalf of the United States. Very briefly, I would note there were approximately eight hour assignments of error in this case. I intend to work through them in the same order that appellant did. If the Court would like to redirect me at any point to anything that is pressing for the Court, I'd be happy to oblige that as well. Moving first, then, to the issue of the potential juror bias of juror number eight. The United States maintains the District Court was not required to sua sponte strike juror number eight and does believe that this Court should review for a plain error in light of the absence of a challenge for cause. The United States relies on, I would note there are two Mitchell cases in this case that have been decided by the parties. The first is the Mitchell case from 2009. The second is the Mitchell case from 2007, which is at 502 Federal 3rd 931. In the 2007 case, the juror was not, there was no motion for cause to strike the juror for cause in that case. This Court, in that published decision, said that because there was no motion to strike for cause, that the potentially biased jurors remaining would be reviewed for plain error. The United States does believe that's the appropriate standard in this case. However, were this Court to review, even as though defendant were to have made the challenge for cause, defendant would still bear the burden of showing that the juror was actually, that the District Court abused its discretion or committed manifest error when it failed to excuse the juror. In this case, the United States does not believe that that happened. I wanted to point out just a couple of things that were mentioned in the initial argument. Defendant, and I apologize, I use defendant in lieu of appellant out of habit, but defendant indicates that the juror expressed outrage over the subject of litigation, and that's simply untrue. In this case, juror number eight indicated that she was a nurse, and that as a nurse, she'd been a nurse for 20 years, she'd worked with children for five, and having worked with children for five years, she'd been a nurse for 20 years, and she'd been a nurse for 20 years. And that's not true. And that's not where the transcript ends. There's these follow-up questions after the jury pool, you know, more broadly has discussed, I'm sure you've read the whole transcript, but I don't see, except for the one case that seems to me to be different, I think the only case where we've got any discussion of what I'll call, you know, panel-wide follow-up questions is the Keketjian case, and that case, of course, the follow-up question goes to burden of proof, not to impartiality. What do we do, if anything, with the judge's panel-wide question about, does anybody think at this point, after this long discussion, that he or she cannot be impartial? What do we do with that? Your Honor, I think that that is tantamount to a follow-up question, and I would note in the other Mitchell case, the one upon which defendant relies, in that case, this court noted that the parties failed to ask for additional clarification, and that was the case here, and they were provided an opportunity. And I want to make that clear, where this happened, where Juror 8 made these comments about which defendant now objects, was right at the outset, when the jurors were introducing themselves, when they were talking about what magazines they subscribed to. It was after that, that the judge asked more detailed questions about the case, and it was after that, that each of the parties were permitted to conduct individual voir dire. Right, so I was asking a more specific question, and my question was, first of all, is there any other reported case where we talk about these follow-up questions, or is it just the one that we've identified here? I think that there is, in that United States v. Mitchell was a reported case, where it was commented on that the parties didn't seek clarification, and again, I would think that that is, again, something... We're still not communicating. I'm speaking about the court asking the follow-up question of the whole panel. I appreciate that the lawyers have an opportunity to ask, and did not, but my question was specific, and not to belabor the point, but I only see one case where we've ever discussed this equivocal juror, and then the judge asked of the entire panel, any reason you think you can't be impartial. Our juror, Number 8, did not raise her hand, and I'm trying to figure out how much weight I should put on that, and I don't see any help in the case law. Am I missing in it? I don't see, and the court is indicating that the only case that the court can find is the Catches Dam case. That's the only one I know of. Do you know of any other case? That's all I'm asking. No, I don't, Your Honor. I would know that that case is different, and that there was objection for cause in that case to prompt that sort of an additional inquiry. Exactly. You have Gonzalez, and you have this Kiketjian where the courts have said, I'll try, is not an unequivocal answer, and so given the statements here, and an expression of rage, which I think was the language used by the juror herself, why doesn't our precedent say to us, well, that's not unequivocal, and therefore it's not enough to overcome the bias? Yes, Your Honor. In all of those cases, in fact, in every one of those cases that defendant cites to, where ultimately the trial judge was found to have abused his or her discretion in permitting the juror to sit, there was a challenge for cause, and that is a distinction with a difference, and the reason why that is a distinction with a difference is because that was the final word in those cases. That was when the challenge was made. That was the final word, was the I'll try. In this case, it wasn't the final word, but what the court's referring to when juror number eight indicated that she had an initial feeling, she indicated she was not sure, and then she said, and I'm at page 45 of the excerpts of record, well, just initial reaction, like my hackles are coming up, and you know, just rage, you know, so I would try, you know, I would hope I would be able to, but I'm not 100%. She actually says it's initial, and subsequent to that, that she's asked any of the witnesses. She doesn't know anything about the case. She's never been a victim of a similar crime. She's able to maintain the presumption of innocence. She hasn't pre-judged the case. She's able to wait until the end of the case to decide the case, and of note, Your Honor, there are other people who are in this veneer who weren't able to say those things, and those people were struck for cause, so the government does maintain that that is a distinction with a subsequent to her initial, I guess, equivocating responses that she did not give a positive response to those additional questions. So, in Gonzales, there was an attempt to strike the juror. That was denied, yeah. Okay. Yes, Your Honor, that is correct, and also in Gonzales, there is, I would just briefly note, because I do think it's important as well, there's also implied bias, as well as actual bias, because in Gonzales, her ex-husband, as she indicated, was also a drug dealer, a cocaine dealer, who also used cocaine. It was a drug trafficking case, and she said that it led to the destruction of her family, and it caused her immeasurable pain, and this court noted how much her situation was mirrored in the case before the court. In this case, juror number eight indicated that she is a nurse, and she had worked with children, and I would note there was no medical testimony in this case. This was a surreptitious recording case, so it's also a bit presumptuous to assume that she was biased, and to assume the defendant didn't want her on that jury, having been able to observe her throughout the entirety of the Vaudier process, the impaling process, knowing full well that what she had been seeing, what she had been referencing, was never going to come out in this case. There would never be medical testimony. Cecil, I'm trying to figure out why the defendant was indicted under 2251A, as opposed to B, and this goes to the word uses, or use, uses the minor, because as I read your brief, it seems to me you're reading out part of the statute. The statute says any person who uses, right, any minor to engage in any sexually explicit conduct for the purpose of creating child pornography, and the last part, of course, is me paraphrasing, and so I think in your brief, what you're really positing is that the question is, did the defendant use the minor to create child pornography? That answer is easy here, but the statute asks a different question. Any person who uses any minor to engage in any sexually explicit conduct for the purpose of... The purpose of producing a visual depiction, yes, your honor. So the problem I'm having is, how did this defendant use the defendant to engage in sexually explicit conduct? I mean, she engaged in sexually explicit conduct. How did he use her to do that? This definition of use, because it pertains, your honor, as this court seemingly has recognized in Lawrenson, which cited with favor to the First Circuit case of Bernou, and I'm probably mispronouncing that, and I apologize, the Eighth Circuit case of Fidel, the Second Circuit case of Sirosis, the Sixth Circuit case of Wright, and in every one of those cases, the courts have echoed again and again, it is the intent of the defendant that is at issue. It is his intent in using the child. It has nothing to do with the child, and the use of the child is... The defendant uses the child by photographing the child with the defendant intends to produce... Counsel, it's use her to engage in sexually explicit conduct. So for the defendant in the Seventh Circuit case, that's a defendant who... Let's just take a hypothetical, it might make it a little easier, but a sleeping child, and perhaps let's make this child an infant, so the child's not engaging or doing anything, right? And then in that screenshot, superimposed, if you would, a defendant who's engaging in sexually explicit conduct with himself, all right? And that image is child pornography. I would have no problem saying that's child pornography, because the infant child is being used as a backdrop, essentially, to suggest that this adult pedophile is sexually aroused by this image of a sleeping baby. So that example, I think, is still the defendant... I have no problem with that. Defendant's using that child to create child pornography. Our case is, it seems to me, of all the cases out there, this one's really tough to put into the framework of 2251A, because the defendant isn't using this child in any way. She's engaging, I mean, arguably, she's engaging in this conduct, and he knows it, and he's filmed it, but he's not using her to engage in, in a sense, as the Seventh Circuit pointed out. He's not enticed her, he's not done anything to cause her to do that. But this is, Your Honor, this is... The United States would maintain it's strikingly different from the Seventh Circuit case, where the child was fully clothed and not engaging in any conduct whatsoever. In this case, this was a surreptitious production, but the defendant only maintained videos where this child... There are no videos, there are no thumbnails remaining, where she is in her room doing homework. I know that. I fully appreciate that, but look at the language in the statute. Uses her to engage in. Yes, and he did use her to engage in by capturing those things, and then further... Wait, wait, wait, wait, wait. That's the point. I need you to just slow down right there if you would. I'm going to listen carefully. How did he use her to engage in sexually explicit conduct? But he used her to create a visual depiction of sexually explicit conduct by photographing that. Now you've reworded the statute, so let me just take you to a slightly different hypothetical. So there's two minors having sex in the park. This guy walks by, happens to have his video, his iPhone, and now takes photos. Is that a violation of A? Is that use? Yes. How has the person used the minor to engage in a sexually explicit conduct? And I'm going to quote from Ortiz Bernal, which is again the First Circuit case. Use is met when a defendant makes the minor the subject of a visual depiction by intentionally photographing the minor while the minor is engaged in sexually explicit conduct. But that's one circuit in different circumstances, but your position is that anytime an individual videotapes a minor with explicit conduct that it's use. Is that right? Yes, when they do it with the intent. Why do we need employ, entice, etc? Why do we even need any other words? Because a lot of times, Your Honor, in the experience of counsel, because the minors produce it themselves and they send it to the defendant. There are definitely instances when the defendant says send me X, Y, and Z. And they have enticed the minor and caused the minor to aid in the production of it. But you wouldn't need that. If use qualifies, if all you're doing is taking an image and you are reproducing it, which is a violation of the law to reproduce it, you don't need any of those other things. So I think what I'm having trouble with is that your interpretation really collapses all of these words into a single one, which is use. I don't believe so, Your Honor, and I would note, okay, just very briefly that use can be met by virtue of intentionally taking a photograph of a child engaging in sexually explicit conduct is set forth in the cases that were cited by the parties in Ortiz-Granau, as indicated in the First Circuit, as well as United States versus Fidel in the Eighth Circuit, United States versus Finley. I think that's right, counsel, and the point we're trying to make is all of those fact patterns did not require the court to zero in on this word the way this case does. I mean, this is sort of the perfect storm of a case for this word. I understand, Your Honor. I didn't mean to cut off the court, I just saw that I was out of time. If the court desires to hear it, I did cite several cases where use was found despite surreptitious production of the images, so those might be more on point if the court would like me to detail those. Sticky issue. I apologize, I didn't hear that. Oh, I just said it's a sticky issue. I didn't ask for anything. I understand. Thank you. All right. Thank you. If you would please, Ms. Bregner, put a minute back on the clock for Mr. Lee. And then you'll need to unmute yourself. Thank you. Your Honor, the words use a minor to engage in implies a causal connection between the defendant and the minor in the sexually explicit conduct, and the facts in this case do not indicate that there was such a causal connection. I wanted to just return just briefly to the court's general questions. The court asked on the issue of juror bias, the court asked, had anybody heard of the case? The court asked, is anyone treated unfairly by law enforcement? The court asked, if anyone was a victim of child pornography, the court asked, would anybody vote for guilty right now? The court asked, would anybody not listen to the evidence? The court asked, would anybody not be able to withhold judgment to the end of the case? The court asked, would anybody require the defendant to prove he was not guilty? The court asked, could anybody not apply the presumption of innocence? So none of these questions were specifically directed at bias. And if I overlooked it, if there was a single question about bias at the end of all these general questions and the juror didn't answer, that doesn't necessarily mean that the juror wasn't biased. And the question is, we don't know, but the juror gave answers clearly indicating that she couldn't be fair. And I don't believe that Dupross would allow someone with these answers to serve on a jury and nevertheless conclude that my client had a fair trial, which he did not. Thank you. Thank you. The case just argued of United States versus Mendez is submitted. Thank both counsel for the argument this afternoon.
judges: McKeown, Christen, Miller